All right, we will call the next case, United States v. Daniels, 22-1378. May it please the court. Elizabeth Ford Malani on behalf of the United States. I'd like to try to reserve five minutes of my time for rebuttal. Reasonable suspicion demands only some minimal level of objective justification for the detention. Here, the facts presented to Officer Idler and the rational inferences from those facts met that threshold of reasonableness. In concluding otherwise, the district court over relied on just one circumstance, Mr. Daniels' clothing. But despite that clothing, the totality of the facts linked Mr. Daniels to the 911 caller's report, that report was reliable, and the settings in which these events occurred added to reasonable suspicion. Officer Idler reasonably investigated further, and this court should reverse. I want to start with the black SUV, which I think linked the 911 caller's report to the potential wrongdoing by Mr. Daniels. As Officer Idler approached the apartment complex, he saw the black SUV right where the 911 caller said that it would be. Daniels saw the officer. Daniels said something to the SUV, and the SUV left the parking lot. Officer Idler testified at the suppression hearing that he believed that the SUV left at Daniels' direction based on these circumstances events because the officer showed up. So Officer Idler concluded that Daniels was involved in the 911 call. This was a reasonable inference entitled to deference that it did not receive in the district court. Contrary to the district court's conclusion, in fact, relying only on the fact that the black SUV left at a normal speed. But that was not the totality of the circumstances inquiry that this court demands. And I think that in recognizing this crucial link between the 911 call, the black SUV, and Mr. Daniels, my opposing counsel makes an argument for a finding that the district court never made, that the SUV's exit from the parking lot was unrelated to Daniels. And I would point this court to the first volume of the appendix, pages 116 and 117, where Mr. Daniels claims that this finding was made. And in fact, the court in that portion of the order is not really talking about Daniels at all. It's a discussion about the SUV's exit from the parking lot, and then relying on a case where the defendant in that case saw an officer and turned around and walked away. And I think that a reasonable inference from that is the exact opposite conclusion that Mr. Daniels argues is in this case. And by not recognizing this connection, this crucial, crucial connection between the 911 call, the black SUV, and Daniels, that's where I think that the district court's order really goes wrong here, and just focusing and trying to pigeonhole this case into the facts of jail, which it just does not. There is a connection between the wrongdoing in the 911 caller's report. What significance is the fact that the caller reported individuals with guns out? I think that that's the- You haven't mentioned that yet. Oh, I think that's the key allegation of wrongdoing. That's what the officer had reasonable suspicion to investigate, that call of persons taking guns in and out of their pockets at a late hour in a high-crime area, where not only was this a high-crime area, but the testimony is actually more specific than that. Officer Eidler says this was an area where there were weapons calls, and that's exactly what the 911 caller reported. But when they showed up, Daniels didn't have a weapon. That's true. He didn't have an obviously observable weapon. And he was dressed totally differently than people she described. Yes, but I think that his interaction with the SUV is what connected him to that 911 caller's report, because the report said there's a black SUV or a dark-colored SUV right in front of the complex. Mr. Daniels shows his connection to that SUV because Officer Eidler sees him say something to its occupants, and then it drives away. And I would point out that Officer Eidler didn't know who was in the SUV when he showed up. It's unclear. All of these reasonable inferences that the officer is making on the spot are perfectly legitimate because he didn't know if the 911 caller saw Mr. Daniels. He didn't know who he saw that was in the SUV. But the fact remains that this weapons call of guns in and out of their pockets was reasonably investigated further by the officer in this case. Well, counsel, though, I mean, just to follow up, if the officer gets there and the person that's being investigated has clothing completely, I mean, just at the opposite end of the spectrum of color, right? I mean, you go from black to very bright, apparently. Doesn't that dissipate or counteract the connection with the SUV? I disagree, because I think that his actions are what made the connection with the SUV. He showed his connection to that SUV by noticing the officer, saying something to the occupants, and the SUV driving away. So I think that the clothes, as I pointed out in my reply brief, the clothes are a red herring, and just because there is this mismatch doesn't mean— Well, why are they a red herring? I mean, why not conclude, oh, this isn't the person because their clothing doesn't match the description given in the 911 call? I think that the conclusion is maybe this was not who the 911 caller saw, or maybe it was considering the fact that Daniels was wearing a black jacket over his orange outfit. Well, the caller reported three men with guns getting in and out of the car. Yes. And was the defendant, would he be the fourth man then? Unknown, because the officer didn't see who was in the SUV. And he said that on the stand, I believe, that I didn't see who was inside, I didn't see what they looked like, I didn't see what they were wearing. So I think that all these, notwithstanding the fact that Mr. Daniels was not wearing the outfit that was described by the 911 caller, his own actions and his interactions with the SUV showed that connection. So I think that there, as I pointed out in my brief, the officer could have made a number of reasonable conclusions. For instance, the 911 caller didn't see Daniels at all, in the sense that he was hidden or something or out of sight, but he is still in connection with this 911 caller's report. And I would point out the fact that reasonable suspicion does not turn on certainties, it's probabilities. And based on the totality of that link, plus the setting in which these events occurred, plus the time of night, which it was delved into in the testimony of the suppression hearing, I think all these facts added together in this totality analysis that the district court didn't undertake, amounted to reasonable suspicion for the officer to investigate further. And I think one of the things that I wanted to discuss a little bit is in the alleged totality of the circumstances test that the district court undertook in its order, a lot of the facts that it cites as unsuspicious or innocent, they really don't bear on the caller's report, which is that's the allegation that the officer had reasonable suspicion of. They don't, whether or not that the parking lot, whether or not Mr. Daniels was standing outside his home, which is one of these sort of extraneous facts, sorry, that the district court talked about, that doesn't really bear on whether or not the 911 caller's report of guns was legitimate or reliable. So I think that that's sort of, there was, in failing to not only evaluate the totality of these facts, the four circumstances that the government outlined, there was also an over-reliance on facts that just don't really bear on whether or not the officer had reasonable suspicion. So that shouldn't, that fact should not be in the totality? The fact that Daniels was outside his home? I just don't see how the district court's order, the tenor of it seemed to sort of weigh all those sorts of facts. The fact that Mr. Daniels was outside his home talking as against reasonable suspicion. And I just don't understand, and I don't think that the case law supports that, that really doesn't bear on the 911 caller's report. So I don't think it's wrong to say it, but I don't think it's correct to weigh that against the facts that Officer Idler had and that the totality of the record shows. And one other aspect of the court's order that I think fundamentally mischaracterizes or misunderstands the law is the reliability analysis with respect to the 911 caller. The court said in a footnote that whether or not this caller was anonymous doesn't matter for purposes of reliability or something to that regard. But I think that really overlooks how this court and how the Supreme Court has analyzed the reliability of 911 calls post the case called Navarrete in the Supreme Court. The 911 call was reliable because it was a 911 call. The caller reported contemporaneous, firsthand observations. The caller stayed on the line. And we just don't have that sort of completely unknown informant case as we do in J.L. So I think the reliance on J.L. is really misplaced in this regard, and I think that that's crucial because that's the key call that Officer Idler is investigating in this case. If there are no further questions, I can answer. Didn't the court also comment on the fact that the call was not reasonable because the person was anonymous? Right. But the person did leave a phone number. That's right. What significance is that? That's crucial. That's crucial to the reliability analysis that a phone number was left. And even, I believe, even if a phone number wasn't left because they used the 911 call system, I think under the Supreme Court's case law in Navarrete, that wouldn't be considered an anonymous call at all because a reasonable person would expect that their calls to 911 could be traced, their location could be found, and there could be follow-up if that caller reported something that was absolutely incorrect with the only purpose to wreak havoc on their enemies, I think is the language. So I think the fact that the phone number is there is crucial and shows one piece of this reliability puzzle with regard to the 911 call. But that's not the only one. It's reliable for several reasons, like I laid out in my brief. Not only the fact that there was a phone number, but the fact that these observations were firsthand. They were contemporaneous. You know, the CAD report that Officer Idler received talks in present tense. All these things are unfolding while the 911 caller is talking to the call taker and then that's relayed to dispatch. So all these things are happening together. But the fact that the 911 caller's report is reliable completely separates this case from J.L. And I think that's why, coming back to your question, Judge Ide, that's why the clothing that Mr. Daniels was wearing was a red herring. Because unlike in J.L., where we had a report but with completely unknown reliability, here we have a report with clear reliability. And if there are any other questions, I'd like to reserve the balance of my time. Good morning, Your Honors. John Arsici from the Federal Defender's Office, appearing for Appellee Lyndell Daniels. I want to start where we ended and at the end of this analysis, which is the totality of the circumstances. Because I think noticeably telling, something that is lacking from the government's briefing and its argument, is any comparison to a case of this Court's in which facts this threadbare were found to constitute reasonable suspicion. And we have pointed to a multitude of cases in which this Court has found far more to be present and not amount to reasonable suspicion. I would point you to Hernandez, Martinez, Lopez, Wood, Frazier, Romero v. Story, all these cases. There's a lot more there than is present here, and this Court found reasonable suspicion to be lacking. The only cases that the government points to in support are U.S. v. Conner, U.S. v. Johnson, right? I'm sorry. Conner and Johnson are the two cases the government cites. Neither is anything like occurred here. You have far more articulable reasonable suspicion. And ironically, in Johnson, the police did exactly what they failed, what the officer in question failed to do here, which is to take a tip that did not itself establish reasonable suspicion and engage in a voluntary encounter, right? The government posits that there's this sort of Hobson's choice here, but it's a false choice. There's not a choice between doing nothing and detaining a presumptively free citizen at gunpoint. Police can engage in voluntary encounters. They can investigate. So if they had just walked up to him and talked to him and said, you know, what's your name? He said, it's David. And then gone about their business, everything would have been okay. He could have sought a voluntary encounter, which is what this Court encourages officers to do, and they lack reasonable suspicion in what the Supreme Court does. Well, I'm trying to figure out exactly what they should have done that you were getting ready to testify or state. That's precisely what he should have done. And it's precisely what the other officers did with respect to the SUV, right? They engaged in a pretextual traffic stop. Nothing wrong with that. If it's midnight and the caller says there's guns there and you're a police officer by yourself or with one other person, you're going to walk up to him and say, hi, I'm Joe Cobb. Boom. No more Joe Cobb. I don't think there's... Wouldn't you take your gun out and have it on the ready anyway? Listen, the Supreme Court has... I don't mean to diminish this in any way, but the Supreme Court has affirmed that there is a Second Amendment right for citizens to carry firearms outside the home for self-defense. If I'm sitting outside at the train station and an officer wants to talk to me, I could be armed. Doesn't mean the officer can come up to me at gunpoint, right? Just full stop with respect to that. Here, two officers were approaching, and importantly, there is nothing to suggest that a man, a black man in orange jumpsuit, had a firearm. There was a call that said there were three men with guns and an SUV and another SUV behind it. And all of that was there. So what do we do to the policeman? Do we say, just put your hands in your pockets and walk up? Yes, he can walk up and encounter. I mean, yes, that's what this court has said, what the Supreme Court has said. If you don't have reasonable suspicion, you go. And just to clarify, the caller identified three men, and she identified them with particularity. Black men in dark hoodies and jeans. And guns. And firearms, yeah. In a dark SUV and a silver sedan, right? When the officer approached, he saw a dark SUV, a silver sedan, and another dark SUV, right? He had a hunch that the first dark SUV was the one that the caller had identified, and he approached. There were no people who met the description. There was only a black man five to ten feet away from the SUV wearing an orange jumpsuit. Well, five to ten feet away, or was he talking to the people in the SUV? The testimony was that he was five to ten feet away and that he said something. We don't know what. Again, the officer had a hunch that he said something to the SUV. He had a hunch that what he said caused the SUV to leave, right? We're just piling inference upon inference here. That's not reasonable suspicion. So, yes, I mean, it's not to discount that, sure, there's concerns with policing. There's concerns with policing during the day. There's concerns with policing at night. But anyone could be armed, and officers approach that. It doesn't give him the basis to do the stop that he did here, particularly when there was an alternative that this court has repeatedly countenanced. And, again, I think it bears mention, the only case that the government really relies on is Johnson, and that's what occurred there. They encountered the first people, the people who actually met the description of the 911 call in that case, and then developed reasonable suspicion based on that voluntary encounter. That's what happened in Hernandez. It happened in a lot of cases. So, you know, just sort of work backwards then through the totality. The government suggests that there's something wrong with considering the totality of the circumstances in the totality of the circumstances. The court's articulation of innocent facts is completely within how the totality of the circumstances test is conducted, right? Again, in Johnson, the court expressly said, we consider mitigating circumstances and aggravating circumstances. That's because the totality of the circumstances is context. It matters a lot. For instance, if a traffic stop, reasonable suspicion is articulated because the person didn't roll down the window entirely, right? Well, that's irrelevant. We don't just stop there. It's a relevant fact that it was 30 degrees out and raining, right? Same here. It's a relevant fact that Archuleta is another case of this courts where it was 1.30 in the morning. Well, that might be suspicious, but the stop was outside a 24-hour convenience store, right? And as the court said, that's not suspicious. Context matters. So being outside of a populated apartment building that's well lit in the evening, late in the evening of the night of the biggest sporting event in the country is a relevant fact. So the court did exactly what this court says to do when considering the totality of the circumstances. It evaluated them independently. It walked through them in a totality. And it considered the whole of the circumstances and how the setting impacted the factors that the government had identified. It did exactly what this court said to do. And I don't really understand the government's suggestion that it did something untoward in doing so. Well, I think your opposing counsel is saying that the court overvalued or put some significance to the fact that this was outside the defendant's home. That that somehow weighed. I don't think, I think, I think the government has a substantive disagreement with the outcome that the district court raised and is trying to turn it into a procedural failing. There's nothing improper about considering the totality of the circumstances and the totality analysis. There's something, though, about weighing something more than it should. I guess that's the argument. I mean, the weight is that we give to the factors and the facts is one that is a Genova review. But you are weighing them. You were weighing them considering the evidence in the record, the like most favorable to the district court's ruling. Right. So these factors that do weigh against things do carry some weight against, you know, against some of the articulations of suspicion that existed here. And I want to talk about those articulations of suspicion individually, too, because they matter. The high crime neighborhood being late at night. Again, context matters. It's a big difference, as in Connor, the other case of the government sites between, you know, a dark alley in the most dangerous neighborhood in Denver where someone called 911 to report someone saying no, no. And then a dark light skinned black man in a fuzzy hunting hat was seen putting a gun in his waistband. And the officers arrived and saw a light skinned dark man in a fuzzy hat near the dark SUV in the exact same location. Very different circumstance than what occurred here. Same as in Archuleta. 24 hour convenience store is not suspicious to be there at night. So and I think courts have been really hesitant to give a lot of weight to late at night and high crime area, lest people's Fourth Amendment rights depend on where they live, where they work, where they choose to recreate. So I really think that carries very little weight in the analysis. On the SUV, because the government really, the government's case really turns on the SUV. And what we're doing is really just piling, I think, speculation on speculation. I think the court made a finding that forecloses this. But let me tell you why that is the case and why it doesn't matter one bit if you agree with me or not. Because as a legal matter, even if you accept every inference the government wants you to draw from the officer's testimony, it doesn't have any legal significance with respect to the reasonable suspicion analysis. So if you look at that record site that the government pointed to, the court says twice the SUV simply left the parking lot. It's comparing that to House, a case where someone turned and just walked away, declined to engage with an officer. And third, you know, I think, well, second slash third, I think the footnote that the court drops is indicative because the court then goes on to discuss the speed at which the SUV left and finding the officer to not be credible with respect to that testimony. It would be exceedingly odd to make a finding and then drop a footnote to remake that finding. If the officer was talking, if the court was talking about speed in the text, it would be odd to then talk about speed in the footnote. And then third, I think it's passingly strange to think that the court, after rejecting and finding not credible the officer with respect to observable physical events that occurred, that is how fast the SUV left, to then turn around and think that the court would find him to be credible with respect to an inference about what he might, about how to interpret something that he heard. So I think that the court's finding is actually well taken. It doesn't matter whether you agree with me on that. Even if you credit the government's view that Mr. Daniels said something, again, we do not know what. And the officer has no idea. That even if you credit that, and even if you credit that that statement caused the SUV to leave, all the SUV did was leave. And this court has repeatedly declined to find reasonable suspicion or indicia of criminality based on someone's decision to depart and decline in interaction with law enforcement. That is a fiercely protected constitutional right. Well, is it opposing counsel's argument that the SUV connected, was connected to the defendant? Not the leaving part, but there was a connection there. That's a barra. I mean, that goes back to, you know, 50 years to the Supreme Court. The guilt by association isn't a basis for a seizure. So that they don't, that doesn't get them there. They need connection and departure as being something suspicious. And this type, the court affirmatively, whatever you agree with me on whether the court found causation, it certainly found that the SUV did not engage in headlong flight. And headlong flight is where departing the scene becomes suspicious. So none of the cases that the government has pointed to, and these are recounted in our brief, I'm not going to revisit them here, are anything like the type of departure that occurred here. This is much more like House. It's much more like Hernandez. It's much more like Frazier. The decision to decline, to engage in law enforcement is not a basis to suspect criminality. So even if you accept their argument on that as a factual matter and give them every credit of the inference, it doesn't legally create any suspicion. And I don't take them to be arguing that the 911 tip alone creates reasonable suspicion, even as to the SUV, let alone to Mr. Daniels, someone who wasn't at all identified by the caller. With respect to, you know, with respect to the 911 call, I don't think there's a lot to say, candidly. I think if there's a red herring in this case, it's the government's efforts to convince you that the 911 call has a significant salience with respect to reasonable suspicion to Mr. Daniels. Because reasonable suspicion is a particularized, individualized objective. A call saying, a call that no one is suggesting has identified criminality or illegality. That identifies three black men, dark hoodies, jeans, is not reasonable suspicion to stop a black man in an orange hoodie who, you know, looked like a traffic cone. Right? Like, this is just... So what do we do? We just tell 911 to forget, don't even bother to pass on that kind of stuff? Absolutely. Because it means nothing? Absolutely not. The 911... When is the reasonable suspicion developed? It's developed over the course of the whole event, isn't it? I agree with you completely. And so the 911 operator did exactly what they should have done here, which is to convey the information as an area watch non-emergency dispatch. Right? An indication to officers that there's been a report. Please investigate further and then investigate. Right? Engage in voluntary encounters. Develop reasonable suspicion if you have a basis to engage in a pretextual traffic stop. Right? Of the SUV. Nothing wrong with that as a Fourth Amendment. That's what those officers did. They stopped it. They developed reasonable suspicion. This officer jumped the gun, as it were, by detaining Mr. Daniels at gunpoint. He walked up. He walked up. Approached him on foot. What's going on? Let's see your hands. And I guess his mistake was to secure the person until he made sure he would be safe. His mistake was violating the Fourth Amendment by seizing a presumptively free citizen. I'm sorry? His mistake was to violate the Fourth Amendment, yeah, by seizing a presumptively free citizen at gunpoint. Because he didn't go up with the gun out on him. He didn't point it at him until he... The testimony was that he pointed it toward, not at. I think that preposition does a lot of work there, if you watch the video. I don't know if there's any dispute as to how he approached. I'm out of time. Happy to answer any questions. Thank you. Thank you. Thank you. Elizabeth Ford Malign, again, on behalf of the United States. I want to jump into this idea that my opposing counsel is really making one of the same mistakes that the district court did, which was highlighting individual pieces of the record and explaining why perhaps they did not contribute to some suspicious activity. For instance, we don't know what Mr. Daniels said to the SUV. That's true. But as soon as the officer arrived, Mr. Daniels saw him, was the testimony, said something to the SUV, and it exits the parking lot. Now, putting that combination of facts together leads to a reasonable inference that Mr. Daniels directed the SUV to leave based upon the officer's arrival. Of course, we don't know what he said, but that's not the key. That's not the end-all, be-all for purposes of reasonable suspicion. Another thing I want to talk about is this Johnson case. Is what, I'm sorry? The Johnson case, which is, candidly, I didn't find closer facts in this circuit, or I looked in a lot of circuits. But the Johnson case, I think, is interesting because we have a lot of similarities that we have here. For instance, a 911 caller who stays on the line for a while as the officers are arriving at the scene. So we have this, again, this sort of reliability of the allegation of wrongdoing. We have a scene that's not exactly as the 911 caller described. In Johnson, I believe the 911 caller said that there was a man and a young, young child, basically, that were arguing or he was pushing her around or there was some sort of interaction going on. Not the case when the officer arrived. They were just walking. And I want to talk about for a minute the totality of the circumstances that this court undertook in Johnson. Yes, this court talked about how it's really important in the reasonable suspicion totality analysis to look at mitigating and aggravating circumstances. That's true. But those were in the context of the facts on which the officer relied. For instance, the fact that the SUV here left at a normal rate of speed. It didn't speed out of the parking lot initially. That's what the court was talking about. The court was talking about the mitigating aspects of the facts on which the officer relied. Here, again, those facts are a reliable 911 call under this court's precedent in the Supreme Court's case in Navarrete, talking about three men putting guns in and out of their pocket. We have a black SUV in exactly the space that the 911 caller said it would be, according to Officer Eiler's testimony. That's what he said at the suppression hearing. We have a connection between that black SUV and, therefore, the 911 call based on Mr. Daniel's actions. And we have the setting in which all of these things occurred. Of course, any individual fact could give rise to innocent inferences, but that's not the key question for reasonable suspicion. In this case, Officer Eiler acted reasonably, and it asks the court to reverse. Thank you. Thank you. Case is submitted. Counsel is excused.